UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

| | |
|---|---|
| IN RE: ETHICON, INC., PELVIC REPAIR SYSTEM PRODUCTS LIABILITY LITIGATION | Master File No. 2:12-MD-02327 MDL No. 2327 |
| THIS DOCUMENT RELATES TO Belanger v. Ethicon, Inc. et al., Case No. 2:13-cv-12036 | JOSEPH R. GOODWIN U.S. DISTRICT JUDGE |

**MEMORANDUM OPINION AND ORDER**
(Motion to Dismiss Claims Brought by Canadian Plaintiffs)

Pending before the court is defendants, Ethicon, Inc. and Johnson & Johnson, Inc., (collectively "Ethicon") motion to dismiss Canadian plaintiffs on *forum non conveniens* grounds [Docket 5]. For the reasons stated below, Ethicon's motion to dismiss [Docket 5] is **GRANTED** pursuant to the conditions set forth in this opinion.

I.   Background

These cases are several of over 40,000 assigned to me by the Judicial Panel on Multidistrict Litigation. These cases involve the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). Out of these 40,000 plus cases, at least three were filed by Canadian plaintiffs. On August 20, 2013, Ethicon moved to dismiss the Canadian actions based on *forum non conveniens*. To date, two of the Canadian plaintiffs have voluntarily dismissed their cases.

In the instant action, Frances Belanger, a resident of Canada, was implanted with Ethicon's Gynemesh on June 16, 2005. (*See* Am. Short Form Compl. [Docket 3]). The implantation surgery took place at Foothills Medical Centre in Calgary, Alberta. (*Id.*). After the

implantation surgery, Ms. Belanger claims that she "experienced infection, erosion, organ perforation, pain and extrusion." (Br. in Opp'n to Mot. by Ethicon, Inc., Johnson & Johnson to Dismiss Claims Brought by Canadian Pls. [Docket 7], at 2). On March 20, 2007, Ms. Belanger underwent revision surgery, "which included a partial vaginectomy, rectal resection, removal of mesh, laporatomy, anterior resection and loop ileostomy." *Id.* On May 22, 2013, Ms. Belanger and her husband directly filed suit into MDL 2327. *Id.*

## II. Discussion

### A. *Forum Non Conveniens* Standard

*Forum non conveniens* is a discretionary doctrine that permits a district court to dismiss or transfer a case if the current forum is inconvenient. *See Nowsco Well Serv., Ltd. v. Home Ins. Co.*, 799 F. Supp. 602, 612-13 (S.D. W. Va. 1991) (Copenhaver, J.), *aff'd*, 974 F.2d 1331 (4th Cir. 1992). *Forum non conveniens* is a flexible inquiry. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 249 (1981). The United States Supreme Court has refused to lay down rigid rules in this area. "Each case turns on its facts." *Id.* at 249. Absent a "clear abuse of discretion," a court's reasonable conclusions deserve "substantial deference." *See id.* at 257. The party seeking to dismiss based on *forum non conveniens* has "the burden of showing that an adequate alternative forum exists." *Jiali Tang v. Synutra Int'l, Inc.*, 656 F.3d 242, 248 (4th Cir. 2011) (citing *Galustian v. Peter*, 591 F.3d 724, 731 (4th Cir. 2010); *Fid. Bank PLC v. N. Fox Shipping N.V.*, 242 Fed. App'x 84, 90 (4th Cir. 2007)). An alternative forum exists if it is "1) available; 2) adequate; and 3) more convenient in light of the public and private interests involved." *Id.*

To meet the availability requirement, the defendant must show that it is amenable to process in the foreign jurisdiction. *See Piper Aircraft*, 454 U.S. at 254 n.22 ("Ordinarily, [the availability] requirement will be satisfied when the defendant is 'amenable to process' in the

other jurisdiction."). "A foreign forum is adequate when (1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Tang*, 656 F.3d at 249 (internal quotation marks omitted). Generally, a change in law that is unfavorable to the plaintiff is not dispositive. *Piper Aircraft*, 454 U.S. at 247. However, an unfavorable change in law is relevant "if the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all . . . ." *Id.* at 254. In other words, "[i]n rare circumstances, . . . where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied." *Id.* at 255 n.22.

If an alternative forum exists, a district court may proceed to the next step—weighing the public and private interests in the case. A district court must weigh these factors in light of the appropriate deference due to the plaintiff's forum choice. *See id.* at 255. Usually, when a domestic plaintiff selects the United States as her forum, a court gives substantial deference to that choice. *Id*. It is assumed that a plaintiff's home forum is convenient to the plaintiff. *Id.* at 255-56. "When the plaintiff is foreign, however, this assumption is much less reasonable." *Id.* at 256. Therefore, when a foreign plaintiff selects a United States court as her forum, this presumption applies "with less force." *Id.* at 255.

### B. Analysis

#### i. Availability of the Alternative Forum

A foreign forum is available if the defendant is amenable to process in that forum. *See Piper Aircraft*, 454 U.S. at 254 n.22. To establish the availability of the alternative forum, Ethicon attached several documents indicating that plaintiffs have already served it with process

3

in Canada. (*See generally* Exhibit 3, Br. in Supp. of Defs.' Mot. to Dismiss Claims Brought by Canadian Pls. [Docket 6]). In its briefing, Ethicon also asserts that it is "established and regulated under the laws of Canada [and] can be served with Canadian process." (Br. in Supp. of Defs.' Mot. to Dismiss Claims Brought by Canadian Pls. [Docket 6], at 3). Moreover, Ethicon states that it will not dispute that it is subject to Canada's jurisdiction. (*See id.*). The plaintiffs do not address whether Canada is an available forum.

The availability requirement is usually satisfied if the defendant stipulates that it is amenable to service of process in the foreign jurisdiction. *See Tang*, 656 F.3d at 249. Here, Ethicon has conceded in its briefing that it would not dispute the jurisdiction of Canadian courts. While Ethicon has not provided a written stipulation or affidavit on this matter, other courts have found that on-record concessions are sufficient to satisfy this requirement. *See, e.g.*, *Miller v. Boston Scientific Corp.*, 380 F. Supp. 2d 443, 448-50 (D.N.J. 2005) (finding defendant's concession in briefing that "it has a presence in Israel [and] is subject to the jurisdiction of the Israeli courts," coupled with the court's power to condition dismissal upon defendant's agreement to submit to process, was sufficient in establishing the existence of an alternative forum). To provide further assurance that Ethicon is amenable to process, I will condition dismissal upon its agreement to submit to process in Canada. Accordingly, I **FIND** that Canada is an available alternative forum.

### ii. Adequacy of the Alternative Forum

An alternative forum is adequate if "1) all parties can come within that forum's jurisdiction, and (2) the parties will not be deprived of all remedies or treated unfairly, even though they may not enjoy the same benefits as they might receive in an American court." *Tang*, 656 F.3d at 249 (internal quotation marks omitted). As previously noted, Ethicon has stated that

it will submit to the jurisdiction of Canadian courts. As to the second prong, Ethicon claims "Canadian courts unquestionably provide the Canadian Plaintiffs with an adequate forum in which to pursue a remedy, and there is no reason whatsoever to believe that the Canadian Plaintiffs would be treated unfairly in the courts of their own country." (*See* Br. in Supp. of Defs.' Mot. to Dismiss Claims Brought by Canadian Pls. [Docket 6], at 4). Ethicon's only record evidence to support this assertion is Exhibit 3, which contains complaints related to judicial proceedings pending against Ethicon in Canada, and Exhibits 1 and 2, which are portions of Canada's Food and Drug Act and Medical Device Regulations. The plaintiffs do not dispute whether Canada provides adequate legal remedies. Instead, they argue Ethicon has failed to meet its evidentiary burden regarding the adequacy of the forum.

Ethicon "bears the burden of showing that an adequate alternative forum exists." *Tang*, 656 F.3d at 248. There is a "low threshold" for adequacy. All the defendant has to show is there is some remedy available, even if the remedy is less favorable than one available in the United States. *See Piper Aircraft*, 454 U.S. at 255 ("Although the relatives of the decedents may not be able to rely on a strict liability theory, and although their potential damages award may be smaller, there is no danger that they will be deprived of any remedy or treated unfairly."); *see also Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009) ("An alternative forum is adequate if it provides the plaintiff with a fair hearing to obtain *some* remedy for the alleged wrong." (emphasis added)). Only if "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all" is dismissal unwarranted. *Piper Aircraft*, 454 U.S. at 254.

Defendants may meet their burden by providing affidavits by foreign legal experts describing the remedies available in the alternative forum. *See, e.g.*, *Tang*, 656 F.3d at 250. Here,

5

Ethicon has provided Canadian complaints that at least identify possible remedies as well as some legal authority underpinning those remedies. For example, according to the record, a plaintiff may sue for civil conspiracy arising from violations of Canada's Food and Drugs Act and Medical Device Regulations, unjust enrichment, and waiver of tort. In addition, under the Health Care Costs Recovery Act, a plaintiff may recover, on behalf of his or her public health care insurer, health care costs covered by the insurer due to the defendant's wrongful conduct. *See* Health Care Costs Recovery Act, SOR/98-282, c. 27, s. 3 (Can.); Crown's Right of Recovery Act, S.A. 2009, c. C-35, ss. 12, 14 & 38(1) (Can.). While an affidavit or law review article thoroughly explaining Canadian legal remedies would have better assisted this court, I find Ethicon has presented the *bare minimum* of evidence to establish that the plaintiffs have some remedy in Canada. In addition, the legal system of most provinces in Canada, like that of the United States, is founded upon English common law. *See* Patrick Malcolmson & Richard Meyers, *The Canadian Regime: An Introduction to Parliamentary Government in Canada* 137 (2009).[1] That point alone is substantial assurance of the availability of a remedy under common law torts. Accordingly, I **FIND** that Canada is an adequate alternative forum.[2]

### iii. Convenience of the Alternative Forum

Because I have found that an alternative forum exists, I now must determine whether the balance of the private and public factors tip the scales in favor of dismissal. Before I conduct this

---

[1] With the exception of Quebec, a civil law based colony, "[t]he other colonies, more British in heritage, had always followed the British practice of embodying much of their private law in a form known as 'common law.'" Malcomsom & Meyers, *supra* at 137.

[2] The plaintiffs also contend that Canada would be an inadequate forum because they "may be barred from bringing a new action by statute of limitations and pre-trial procedures are superior in this forum where Multi-District Litigation already exists." (Br. in Opp'n to Mot. by Ethicon, Inc., Johnson & Johnson to Dismiss Claims Brought by Canadian Pls. [Docket 7], at 3). However, "the loss of various other procedural advantages—such as the alternative forum's restrictions on the scope or nature of discovery and the lack of a class action or other aggregation procedures—normally will not prevent dismissal." 14D Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3828.3 (3d ed. 2009) (collecting cases).

analysis, I note again that the usual deference given to a plaintiff's forum choice applies with "less force" when a foreign plaintiff selects a United States court as her forum.

### 1. Private Factors

In considering the private interests of the litigants, I must consider the following factors:

> [1] relative ease of access to sources of proof; [2] availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; [3] possibility of view of premises, if view would be appropriate to the action; and [4] all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

#### a. Relative Ease of Access and Ability Obtain Attendance of Willing Witnesses

Because Ms. Belanger's short form complaint indicates she was implanted with the device in Canada, Ethicon argues that I can presume Ms. Belanger received medical treatment in Canada. Therefore, Ethicon contends that a majority of evidence related to causation, injury, and damages must be located in Canada. As a result, Ethicon claims it would "face significant time and expense traveling longer distances to collect" a majority of the evidence in this case. (Br. in Supp. of Defs.' Mot. to Dismiss Claims Brought by Canadian Pls. [Docket 6], at 9).

The plaintiffs counter that evidence of testing, design, manufacture, and marketing are primarily located in the United States. The plaintiffs also argue that there will be more liability evidence than other types of evidence because "treating physicians rarely attend trial" and instead give testimony via videotaped depositions. (Br. in Opp'n to Mot. by Ethicon, Inc., Johnson & Johnson to Dismiss Claims Brought by Canadian Pls. [Docket 7], at 7-8). In addition, observing that Ethicon had little difficulty obtaining Ms. Belanger's medical records through a signed affidavit, the plaintiffs insinuate that Ethicon would have no trouble obtaining medical evidence located in Canada.

7

In a products liability action, where a majority of the evidence related to causation, injury, and damages is located in the alternative forum, courts generally find this fact weighs in favor of dismissal. *Aguinda v. Texaco, Inc.*, 303 F.3d 470, 479 (2d Cir. 2002) (affirming dismissal where "Plaintiffs sustained their injuries in Ecuador and Peru, and their relevant medical and property records [were] located there"); *De Melo v. Lederle Labs.*, 801 F.2d 1058, 1062-63 (8th Cir. 1986) (affirming dismissal where evidence of plaintiff's medical history, "necessary regardless of the theory of recovery," was located in Brazil); *Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1125 (S.D.N.Y. 1992) (granting dismissal where bulk of evidence essential to establishing causation, product identification, harm, and damages was located in foreign forum); *Ledingham v. Parke–Davis*, 628 F. Supp. 1447, 1450 (E.D.N.Y. 1986) (granting dismissal where "the vast majority of evidence relating to the causation and damages elements of plaintiff's claims" was located abroad.).

The rationale behind this result is that a plaintiff must prove causation, injury, and damages in addition to liability. If a majority of evidence related to those elements were located abroad, it would be inconvenient for the plaintiff to pursue her claim in the United States. In addition, defendants have a substantial interest in this evidence because they can use it to dispute causation and to raise other defenses. *See Doe*, 807 F. Supp. at 1126.

Here, the record indicates that Ms. Belanger was implanted with the product in Canada. Moreover, in their briefing, the plaintiffs implicitly concede that Ms. Belanger received medical treatment for her injuries in Canada. ((Br. in Opp'n to Mot. by Ethicon, Inc., Johnson & Johnson to Dismiss Claims Brought by Canadian Pls. [Docket 7], at 2) ("Plaintiff's counsel had no problem obtaining the medical records from *Canadian health care providers* with the affidavit signed by Plaintiff Belanger and sent to Defense counsel.") (emphasis added)). Although I lack additional evidence on Ms. Belanger's treatment history, I find it reasonable to infer that evidence related to causation, injury, and damages are located exclusively in Canada. Although evidence

8

related to plaintiffs' claims are located in Canada and the United States, on balance, Ethicon will face a greater burden in accessing evidence if a trial proceeds in the plaintiffs' forum of choice.

### b. Availability of Compulsory Process

Ethicon claims this court's subpoena power cannot reach unwilling Canadian witnesses, such as treating physicians or other non-parties. However, the plaintiffs contend "U.S. litigants may obtain evidence from unwilling Canadian witnesses via letters rogatory. Canadian courts generally seek to enforce letters rogatory." ((Br. in Opp'n to Mot. by Ethicon, Inc., Johnson & Johnson to Dismiss Claims Brought by Canadian Pls. [Docket 7], at 7) (citing *Zingre et al. v. The Queen*, [1981] 1 S.C.R. 392, 401 (Can.)).

"[A] letter rogatory is the request by a domestic court to a foreign court to take evidence from a certain witness." Harry Leroy Jones, *International Judicial Assistance: Procedural Chaos and A Program for Reform*, 62 Yale L.J. 515, 519 (1953). My review of Canada's letter rogatory process reveals that it is time-consuming, expensive, and burdensome. *See* Pamela D. Pengelley & Cozen O'Connor, *A Compelling Situation: Enforcing American Letters Rogatory in Ontario*, 85 Canadian Bar Rev. 345 (2006); 4 *Moore's Federal Practice*, § 28.12[1]. *See generally In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431, 2001 WL 1590512, at *11 (E.D.N.Y. Oct. 31, 2001) (observing difficulties counsel had obtaining discovery from Canada through letters rogatory). If Ethicon used this procedure, it appears that most of the testimony would have to be presented through videotaped depositions. *See id.* As the United States Supreme Court has observed, "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory to court, jury or most litigants." *Gulf Oil Corp.*, 330 U.S. at 511.

However, if a trial were held in Canada, the Canadian court might also have difficulty obtaining the presence of unwilling witnesses located in the United States. Nevertheless, considering

9

the evidence and witnesses this court anticipates are located in Canada, and the preference for live testimony, I find this factor weighs slightly in favor of Canada as the more convenient forum.

### c. Ability to Implead Other Defendants

Ethicon notes that it may wish to implead Canadian health care providers or other Canadians after it conducts further discovery. As Ethicon correctly notes, the inability to implead foreign defendants weighs in favor of dismissal. *Piper Aircraft*, 454 U.S. at 259; *Miller*, 380 F. Supp. 2d at 443; *Ledingham*, 628 F. Supp. at 1451; *Doe*, 807 F. Supp. at 1116. Although Ethicon could seek indemnity or contribution actions against these hypothetical third parties, it would be more efficient to resolve all claims in one trial. Allowing otherwise would waste judicial resources and create the risk of inconsistent judgments. *See Allstate Life Ins. Co. v. Linter Grp. Ltd.*, 994 F.2d 996, 1002 (2d Cir. 1993). After weighing the above-described private interests, I **FIND** these interests favor Canada as a more convenient forum.

### 2. Public Factors

The public factors I must consider are the following:

> [1] the administrative difficulties flowing from court congestion; [2] the "local interest in having localized controversies decided at home"; [3] the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; [4] the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; [5] and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Gulf Oil Corp*, 330 U.S. at 508.

### a. Local Interest in Having Localized Controversies Decided at Home

Ethicon argues Canada has a strong interest in regulating mesh products marketed and sold in Canada because such products are subject to "Canada's unique statutory and regulatory regime." (Br. in Supp. of Defs.' Mot. to Dismiss Claims Brought By Canadian Pls. [Docket 6], at 7-8) (citing Food & Drugs Act, R.S.C. 1985, c. F-27 (Can.); Medical Device Regulations, SOR/98-

10

282(Can.))). The plaintiffs cite *Haddad v. Richardson Merrell, Inc.*, 588 F. Supp. 1158 (N.D. Ohio 1984) for the proposition that whether a product is regulated by a foreign plaintiff's forum is irrelevant to the *forum non conveniens* analysis. *Id.* at 1162. In addition, according to the evidence before it, the *Haddad* court concluded that Canadian and American regulations were not so different as to create a true conflict. *Id.* Given other reasons that supported trial in the United States, the court concluded that "the regulated nature of [the product] does not require a different result as regards defendant's *forum non conveniens* motion." *Id.*

Despite the plaintiffs' contention, many courts recognize that the forum that regulates the product has a strong interest in the resolution of an action involving the product. *See, e.g.*, *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003) ("If accepted, plaintiffs' argument would curtail the rights of foreign governments to regulate their internal economies and threaten to engulf American courts with foreign claims"); *Kryvicky v. Scandinavian Airlines Sys.*, 807 F.2d 514, 517 (6th Cir. 1986) ("[T]his court has held that the country where the injury occurred has a greater interest in the ensuing products liability litigation than the country where the product was manufactured."); *In re Fosamax Prods. Liab. Litig.*, MDL 1789, 2009 WL 3398930, at *4 (S.D.N.Y. Oct. 21, 2009) ("[T]he foreign country in which the product was sold and ingested has the foremost interest in defining the standard of conduct which pharmaceutical companies must follow in distributing products under its regulatory scheme."); *Ledingham v. Parke–Davis Div. of Warner Lambert Co.*, 628 F. Supp. 1447, 1451 (E.D.N.Y. 1986) ("[W]hen a regulated industry, such as the pharmaceutical industry, is involved in an action, the country where the injury occurs has a particularly strong interest in the litigation."); *Harrison v. Wyeth Labs. Div. of Am. Home Prods. Corp.*, 510 F. Supp. 1, 4 (E.D. Pa. 1980), *aff'd sub nom. Harrison v. Wyeth Labs., a Div. of Am. Home Prods. Corp.*, 676 F.2d

685 (3d Cir. 1982) ("Questions as to the safety of drugs marketed in a foreign country are properly the concern of that country; the courts of the United States are ill-equipped to set a standard of product safety for drugs sold in other countries.").

As one court noted, "trying the plaintiff's claim in the United States would risk disrupting the judgments of foreign regulatory bodies by imposing an American jury's view of appropriate standards of safety and labeling on companies marketing and selling the drug." *In re Vioxx*, 2009 U.S. Dist. LEXIS 55973, at *25 (E.D. La. Feb. 11, 2009). Whether Canadian and American regulatory schemes are similar does not dispense with these countries' valid interest in controlling the interpretation of their regulatory regimes. As the Southern District of New York explained:

> The forum whose market consumes the product must make its own determination as to the levels of safety and care required. That forum has a distinctive interest in explicating the controlling standards of behavior, and in enforcing its regulatory scheme. The standards of conduct implemented, and the level of damages assessed, will reflect the unique balance struck between the benefit each market derives from the product's use and the risks associated with that use; between the community's particular need for the product and its desire to protect its citizens from what it deems unreasonable risk.

*Doe v. Hyland Therapeutics Div.*, 807 F. Supp. 1117, 1129 (S.D.N.Y. 1992). Therefore, I **FIND** that because the product is subject to Canada's regulatory and statutory regime, Canada has a strong interest in the action.[3]

---

[3] The plaintiffs also argue that "is axiomatic that the United States has a strong interest in deciding issues regarding the safety of products manufactured within its borders." ((Br. In Opp'n to Mot. by Ethicon, Inc., Johnson & Johnson to Dismiss Claims Brought by Canadian Pls. [Docket 7], at 7). However, numerous American plaintiffs have brought actions against Ethicon in this MDL. This voluminous litigation is more than sufficient to protect the American interests contemplated by the plaintiffs. *See In re Vioxx*, 2009 U.S Dist. LEXIS 55973, at *25; *see also In re Fosamax Prods. Liab. Litig.*, MDL 1789, 2009 WL 3398930, at *5 (S.D.N.Y. Oct. 21, 2009) ("The presence of other similar actions further reduces the United States' interest in this particular matter as they 'ensure[ ] that appropriate standards of care are applied,' and if the Defendants are found liable, then they and others will be deterred from engaging in similarly inappropriate conduct in the future.") (citing *In re Rezulin Prods. Liab. Litig.*, 214 F. Supp. 2d 396, 399 (S.D.N.Y.2002)).

### b. Choice of Law, Avoiding Application of Foreign Law, the Unfairness of Burdening Citizens in An Unrelated Forum With Jury Duty

In deciding a motion to dismiss based on *forum non conveniens*, I need not conduct a lengthy choice of law analysis. *See Corporacion Tim v. Schumacher*, 418 F. Supp. 2d 529, 533 (S.D.N.Y. 2006) ("[T]he Court need not ultimately decide the conflict of laws issue for purposes of this decision [regarding *forum non conveniens*] . . . ."); *Varnelo v. Eastwind Transp.*, No. 02-2084, 2003 WL 230741, at *27 (S.D.N.Y. Feb.3, 2003) ("[I]t is well established that a court considering a *forum non conveniens* motion should not engage in a complex conflict of laws inquiry . . . ."). The likelihood that foreign law may apply "weighs heavily in favor of dismissal." *In re Vioxx*, 2009 U.S. Dist. LEXIS, at *30 n.4; *see also Ledingham v. Parke-Davis Div. of Warner-Lambert Co.*, 628 F. Supp. 1447, 1452 (E.D.N.Y. 1986) ("This Court's unfamiliarity with Canadian law supports dismissal of the action on the basis of *forum non conveniens*.").

As this is a direct-filed case, the choice of law that applies is the place where the plaintiff was implanted with the product. *Sanchez v. Boston Scientific Corp.*, No. 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014). Here, the plaintiff was implanted in Canada and thus Canadian choice of law rules would apply. Having to apply a foreign country's choice of law rules itself suggests dismissal is appropriate. Nevertheless, Canada appears to apply the *lex loci delecti* ("place of injury") choice of law test. *See generally Tolofson v. Jensen*, [1994] 3 S.C.R. 1022 (Can.). Because Ms. Belanger was implanted in Canada, it is likely that Canadian law would apply to the action. Finally, it would be unfair to burden American citizens with jury duty related to an action that involves Canadian citizens who were injured in Canada.

### c. Administrative Difficulties Flowing from Court Congestion

"Administrative difficulties follow for courts when litigation is piled up in congested centers instead of being handled at its origin." *Gulf Oil v. Gilbert*, 330 U.S. 501, 508 (1947). This court is managing pre-trial matters for over 40,000 transvaginal cases involving products from several different manufacturers. Although multidistrict litigation involves some congestion, retaining jurisdiction over foreign actions would further exacerbate the administrative difficulties this court is facing. *See In re Vioxx*, 2009 U.S. Dist. LEXIS 55973, at *20 (E.D. La. Feb. 11, 2009); *In re Fosamax Prods. Liab. Litig.*, MDL 1789, 2009 WL 3398930, at *6 (S.D.N.Y. Oct. 21, 2009). Accordingly, I **FIND** the public interest factors weigh in favor of dismissal. Because the balance of the private and public factors indicates dismissal is appropriate, I **GRANT** Ethicon's motion to dismiss.

### III. Conclusion

For the reasons stated above, Ethicon's motion to dismiss [Dockets 5] is **GRANTED** provided that:

**A.** Ethicon submits to service of process and jurisdiction in Canada with respect to this action.

**B.** Ethicon will not, in raising any statute of limitations or similar defense in Canada, include the period that a suit, not barred by a statute of limitations in this country, was pending against it in a court of the United States.[4]

It is **ORDERED** that Ethicon advise this court of its consent to the above conditions within fourteen days of the date of this Order. This court will dismiss this action only upon timely receipt of Ethicon's written stipulation.

---

[4] *In re Vioxx*, 2009 U.S. Dist. LEXIS 55973, at *41 (E.D. La. Feb. 11, 2009).

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     January 30, 2014

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE